HADLEY v TRIO TOOL COMPANY

Docket No. 70808. Submitted June 19, 1984, at Detroit.—Decided June 3, 1985.

Plaintiff, Russell Hadley, was injured while trying to repair a machine built by defendant, Trio Tool Company, for his employer, third-party defendant, Ford Motor Company, when his hand became caught in the machine. Plaintiff brought an action for damages against defendant in the Wayne Circuit Court, alleging negligence, breach of express and implied warranties and reckless and wanton misconduct. Defendant brought a third-party action against Ford Motor Company for indemnification. The court, Lucille A. Watts, J., granted summary judgment for third-party defendant, Ford Motor Company, and a judgment for plaintiff on a jury verdict. Defendant appealed. *Held:*

1. Trio argued that it was error for the court to admit evidence that, subsequent to plaintiff's injury, Ford installed a safety guard on the machine at the point where plaintiff's injury occurred. Admission of evidence of installation of a safety device on equipment after a plaintiff was injured by the equipment in a trial for damages arising out of the injury is permissible where the evidence is not introduced for the purpose of establishing the negligence of the company which undertook the remedial action, the repairing company is not a party to the suit and is not prejudiced in any way by the admission of the evidence, the evidence is otherwise relevant, admission of the evidence does not offend policy considerations favoring encouragement of repairs, and the repairs were not undertaken at the direction of a party plaintiff so that it did

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur.2d, Products Liability § 284 *et seq.*

Manufacturer's or seller's obligation to supply or recommend available safety accessories in connection with industrial machinery or equipment. 99 ALR3d 693.

[2] 41 Am Jur 2d, Indemnity § 19 *et seq.*

Products liability: right of manufacturer or seller to contribution or indemnity from user of product causing injury or damage to third person, and vice versa. 28 ALR3d 943.

not constitute a self-serving, out-of-court declaration by that party. Admission of the evidence was not erroneous.

2. Generally, indemnity is available only if the party seeking it is not actively negligent. The court will examine the primary plaintiff's complaint and if that complaint alleges active negligence the third-party plaintiff is not entitled to either common-law indemnification or implied contractual indemnification. The court properly granted summary judgment for third-party defendant, Ford Motor Company.

Affirmed.

1. Products Liability — Evidence — Negligence — Repairs After Injury.

Admission of evidence of installation of a safety device on equipment after a plaintiff was injured by the equipment in a trial for damages arising out of the injury is permissible where the evidence is not introduced for the purpose of establishing the negligence of the company which undertook the remedial action, the repairing company is not a party to the suit and is not prejudiced in any way by the admission of the evidence, the evidence is otherwise relevant, admission of the evidence does not offend policy considerations favoring encouragement of repairs, and the repairs were not undertaken at the direction of a party plaintiff so that it did not constitute a self-serving, out-of-court declaration by the party.

2. Indemnity — Actions — Active Negligence.

Generally, indemnity is available only if the party seeking it is not actively negligent; the court will examine the primary plaintiff's complaint and if that complaint alleges active negligence the third-party plaintiff is not entitled to either common-law indemnification or implied contractual indemnification.

*Gromek, Bendure & Thomas* (by *Nancy L. Bosh*), for plaintiff.

*Sullivan, Ward & Bone, P.C.* (by *Michelle A. Thomas* and *Richard G. Ward*), for Trio Tool Company.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John E. S. Scott* and *Richard A. Glaser*), for third-party defendant Ford Motor Company.

Before: ALLEN, P.J., and WAHLS and M. WAR-SHAWSKY,* JJ.

WAHLS, J. Defendant Trio Tool Company appeals as of right from a judgment of the Wayne County Circuit Court, entered April 25, 1983, effecting a jury verdict of $700,000 against defendant for negligence. Defendant also appeals as of right from an order entered October 28, 1982, which granted third-party defendant Ford Motor Company's motion for summary judgment, dismissing it as a party.

On December 7, 1979, plaintiff, Russell Hadley, brought this action against defendant Trio Tool Company. The complaint contained three counts: negligence, breach of express and implied warranties, and reckless and wanton misconduct. Defendant's liability allegedly resulted from an accident on April 13, 1977, at a Ford plant where plaintiff worked as a journeyman electrician. Plaintiff suffered injury to his right hand, ultimately necessitating amputation, as he tried to repair an in-line transfer machine designed and manufactured by Trio. Among other things, it was alleged that defendant breached a duty to plaintiff by failing to design, develop, manufacture and install safety shields or "guards" on the machine which would have protected maintenance personnel who serviced the machine. Defendant answered the complaint on February 25, 1980, and alleged, as an affirmative defense, that plaintiff had been negligent.

By order of January 4, 1982, upon stipulation of the parties, Trio was allowed to file a third-party complaint adding Ford Motor Company as a third-party defendant. Trio sought indemnification from Ford should Trio be found liable to plaintiff.

* Circuit judge, sitting on the Court of Appeals by assignment.

Thereafter, Ford moved for summary judgment, pursuant to GCR 1963, 117.2(1). The motion was granted and, by order of October 28, 1982, Trio's third-party complaint against Ford was dismissed.

The principal action went to trial in March, 1983. Trio moved to exclude any reference to the fact that Ford installed a guard on the machine following plaintiff's accident. Trio's attorney indicated that Trio did not dispute the feasibility of installing a guard. Plaintiff's counsel noted that evidence would be presented at trial that every piece of machinery at Ford is to have all "pinch points" guarded, and thereby suggested that the evidence of subsequent installation of the guard was relevant to this issue. The court denied the motion.

Thomas Banks, a Ford purchasing specialist, testified in detail concerning the contract between Ford and Trio for manufacture and design of the in-line transfer machine. Trio agreed to comply with Ford standards and governmental safety regulations in designing and manufacturing the machine; a plethora of documents were introduced through Banks to demonstrate this. Banks testified that Ford standards, included within the Ford procurement handbook, as well as industry standards and governmental regulations required that all "pinch points" (an area where a person's body parts could be caught in the machinery) must be guarded. The machine builder, Trio, was responsible for designing and building the equipment and putting guards on it, and Ford looked to Trio to be sure the machine was properly guarded. Banks admitted that Ford safety and process engineers had to inspect and approve the machine before shipment, but he indicated the engineers approved only the general functioning of the machine, not the "specifics". The tool manufacturer maintained

responsibility to conform to the standards under the contract.

Bruce Parks, a Ford manufacturing process engineer, testified that he guided Trio in design of the machine, but only to the point that Ford was confident the machine would "get the job done". The design was done by Trio, and only the basic concept of design was approved by Ford. Trio was expected to meet Ford, industry and OSHA standards which required that all pinch points be guarded. Parks testified that, although he reviewed the machine, the pinch point in question was not obvious to him since it was close to the floor. Had he seen it, he would have required Trio to guard it. Additionally, not all guards are installed by the time Ford engineers inspect a machine at the manufacturer's plant.

Parks testified that on April 13, 1977, the machine in question was on the Ford plant floor, and they were trying to "qualify" the machine for production when the machine stopped in mid-cycle. Parks believed there might be an electrical problem so he requested an electrician. Plaintiff, a journeyman electrician whose job was troubleshooting and repair, was called to the machine. He looked at the electrical panel and blueprint of the electrical circuit, and apparently concluded a "parts present switch" was not functioning. He then picked up a piece of welding rod and reached into the machine. Parks next heard plaintiff cry out and saw the machine begin to move, crushing plaintiff's hand between a transfer bar and a stationary bar.

Asked whether the machine was modified following the accident, Parks indicated that guarding was installed at Ford's direction so a similar incident could not occur; the guard protected the pinch point which had previously not been

guarded. On cross-examiantion, Parks indicated that the switch plaintiff was trying to trip at the time of the accident could have been moved from above rather than from below the machine, and it was his opinion that had plaintiff "locked out" the electricity, the accident would not have occurred.

Albert Waineo, general manager of Trio, was called by plaintiff under the adverse witness statute. Waineo admitted that Trio was responsible for the design and manufacture of the machine but also said that Ford had much input into the machine design. He admitted that Ford standards, state safety codes and U.S. Department of Labor regulations, which Trio was compelled to comply with, required that pinch points be guarded. He admitted that the transfer rail did create a pinch point against the stationary rail on the machine, and that it was not guarded. Waineo said that Trio checked the machine for all pinch points they could observe, had them guarded, complied with the standards to the best of its ability, and used Ford safety engineers to check the machine.

Waineo admitted that Trio's people were in a better position to know the inner workings of the machine because they had worked on it on a daily basis in designing and building it; however, he also indicated the machine was really a "joint venture" between Ford and Trio, and the Ford people had been much involved in the last couple months before the machine was approved for shipment. At the time of the accident, however, Ford had not finally accepted the machine from Trio although it had been at the Ford plant for about six weeks. Asked if it were possible to fabricate and install a guard for the machine at the point where plaintiff was injured, Waineo admitted it was feasible and that one was installed after the accident.

Professor Herbert Ludwig testified as an expert

witness for plaintiff. He expressed the opinion that Trio created an unreasonable risk of harm by not guarding the pinch point as required by law and industrial standards. He said the injury was "very definitely" foreseeable by the manufacturer. Among other things, Professor Ludwig discussed National Safety Council standards, OSHA requirements, Ford standards, and a handbook of industrial safety standards. Ford utilized a system of guarding pinch points with color-coded guards; Trio did not follow the standards. If a guard had been present, plaintiff would have known he was entering a hazardous area and would have been able to take precautions. Ludwig testified that he reviewed the guard which was subsequently placed on the machine, as depicted in photographs which were introduced in evidence, and said the guarding was appropriate and complied with standards.

Plaintiff testified that he was not familiar with the in-line transfer machine at the time he was called on to repair it. He testified that guards are on all machines at Ford any place there is movement where people have to be protected and may be removed only by millwrights. If there had been a guard on a machine, he would have taken extra precautions because the guard signified there were moving parts. Had there been a guard on the machine in question, he would have observed an identical in-line transfer machine operate to see how it functioned before working on the machine. When called to work on the machine because it had stopped cycling, plaintiff concluded that the parts present switch for a load station was probably "not made". The switch was not visible or accessible from the top of the machine, so he reached in from the bottom of the machine with a welding rod to trip the switch, at which point the machine started up and a bar on the machine

caught his arm, crushing his hand. Plaintiff testified that an electrician would not "lock out" the machine before testing the switch to see if that was the problem.

On cross-examination, defense counsel elicited testimony from plaintiff that, had he used a "run out" switch on the machine, the parts present switch would have been bypassed and he could have determined if the switch was the problem without putting his hand in the machine. Plaintiff also agreed that he might have tested the switch with a continuity tester.

Following presentation of plaintiff's case, defendant moved for a directed verdict on all counts. The court denied the motion as to the negligence and breach of warranty counts but granted a directed verdict on the reckless and wanton conduct count.

Albert Waineo was recalled to the stand as a defense witness. His testimony primarily concerned other ways plaintiff could have determined whether there was an electrical problem with the parts present switch, including use of a voltmeter, continuity tester, and a "run out" switch.

The jury returned a verdict against Trio, finding it negligent, and assessing damages at $1 million; it also found that plaintiff was comparatively negligent and the damages should therefore be reduced 30%. A judgment for plaintiff in the amount of $700,000 was entered on April 25, 1983.

I

Trio argues that reversible error occurred when the court admitted evidence that, subsequent to plaintiff's injury, Ford installed a safety guard on the in-line transfer machine at the point where plaintiff's injury occurred.

MRE 407 provides:

"When, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Our Supreme Court has recognized that evidence of subsequent remedial measures, inadmissible when implemented by the defendant, may be admissible when the measures were taken by a nonparty. In *Denolf v Frank L Jursik Co,* 395 Mich 661, 667; 238 NW2d 1 (1976), the Court explained:

"The rule is primarily grounded in the policy that owners would be discouraged from attempting repairs that might prevent future injury if they feared that evidence of such acts could be introduced against them. This policy consideration is absent in a case, such as this, where imposition of liability is not sought against the person taking the remedial action."

The *Denolf* Court limited its holding, that evidence of subsequent remedial measures undertaken by a nonparty is admissible, to situations where "(1) evidence of subsequent remedial action is otherwise relevant, (2) admission of the evidence would not offend policy considerations favoring encouragement of repairs, and (3) the remedial action is not undertaken at the direction of a party plaintiff * * *". 395 Mich 669-670.

Applying the principle discussed in *Denolf* to the present case, we conclude that no error occurred when the trial court admitted evidence that Ford

subsequently installed a safety guard. (1) The evidence was relevant. A major focus of the trial was defendant's alleged failure to comply with relevant Ford manufacturing standards, industry standards, and governmental safety regulations. Evidence that a safety guard was installed by Ford after it became aware that a pinch point on the machine was unguarded was probative of the fact that Ford required pinch points to be guarded; it did not directly compel an inference of negligence from the mere fact that a subsequent modification occurred. (2) Admission of the evidence did not offend policy considerations favoring encouragement of repairs. As the employer of the person injured and of other potential victims, and as a nonparty to the suit, Ford would not have viewed the admissibility of evidence of the repair as a factor in deciding to make the safety improvement. (3) The plaintiff clearly did not order installation of the safety guard; the guard was added at Ford's direction.

Michigan's approach to allowing evidence of subsequent remedial measures taken by nonparties is in line with the general rule and is sensible from a policy perspective. "When the repairs or changes are effected by a third person, the policy ground for exclusion is no longer present, and the tendency is to admit the evidence." McCormick, Evidence (3d ed), § 275, p 816. See also *Kueppers v Chrysler Corp,* 108 Mich App 192; 310 NW2d 327 (1981), *lv den* 414 Mich 863 (1982), and *McLaughlin v Great Lakes Contracting Co of Detroit,* 82 Mich App 729; 267 NW2d 489 (1978).

A decision whether to admit evidence rests initially within the discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. See *People v Golochowicz,* 413 Mich 298, 322; 319 NW2d 518 (1982). The trial court

here certainly did not abuse its discretion by ruling that the evidence of Ford's installation of a guard after plaintiff's accident could be admitted. We affirm the judgment for plaintiff.

## II

Trio argues that the trial court erred by granting Ford's motion for summary judgment on the basis that the active negligence alleged against Trio precluded it from pursuing a third-party claim for implied contractual indemnification against Ford. We conclude that the lower court acted properly when it granted Ford's motion for summary judgment. Under Michigan law, a defendant who is allegedly personally at fault may not successfully pursue a third-party claim for implied contractual indemnification.

Trio relies primarily on *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972), for the proposition that the active negligence of a defendant will not preclude it from seeking implied contractual indemnification from a third-party defendant. Trio reads *Dale* to say that an implied contract of indemnity may be found where the indemnitee is without personal fault *or* where the would-be indemnitor was better situated to adopt preventive measures to reduce the likelihood of injury and liability than was the defendant. Trio also relies on *Hill v Sullivan Equipment Co,* 86 Mich App 693; 273 NW2d 527 (1978), *lv den* 406 Mich 880 (1979), where this Court held that the trial court erred by dismissing a third-party claim based on implied contractual indemnity. Again, Trio reads *Hill's* majority opinion to say that an implied contract of indemnity theory is available where the defendant/third-party plaintiff can show it was without personal fault or where the purported

indemnitor was in the best position to reduce the chance of injury.

Trio's reading of *Dale* to suggest the two alternatives available to the defendant/third-party plaintiff springs from the following language:

"We prefer to base such right [to indemnity] upon the equitable principle that Whiteman was without personal fault or as the United States Supreme Court reasoned in *Italia Societa per Azioni di Navigazione v Oregon Stevedoring Co, Inc,* 376 US 315, 324; 84 S Ct 748; 11 L Ed 2d 732 (1964): '[L]iability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury.'" *Dale, supra,* p 706.

Trio, however, ignores the decision in *Langley v Harris Corp,* 413 Mich 592; 321 NW2d 662 (1982), where the Supreme Court specifically disavowed the interpretation of *Dale* which Trio now urges. After quoting the above-quoted excerpt from *Dale,* the *Langley* Court observed:

"The idea that 'liability should fall upon the party best situated to adopt preventive measures' has been quoted as one of the basic principles of indemnity [citations omitted].

"However, correlating absence of personal fault with the standard that liability should be borne by the party that is best able to adopt preventive measures erroneously elevates to a general criteria of indemnity the Supreme Court's holding in the *Italia* decision.

\*  \*  \*

"This Court has consistently held that the active negligence of a party will preclude the recovery of indemnity. In cases where negligence is alleged, we reject the notion that the *Italia* comparative test is an appropriate consideration." *Langley, supra,* pp 599-600, fn 4."

Subsequent decisions of this Court, as Ford has-

tens to point out, have indicated that active negligence alleged against a defendant precludes that defendant from seeking indemnity from a third party, even under an implied contract of indemnity. This Court has summarized the principle as follows:

"[T]he general rule is that indemnity is available only if the party seeking it is not actively negligent. In ascertaining this, the court examines the primary plaintiff's complaint; if that complaint alleges active negligence, the defendant, third-party plaintiff is not entitled to either common-law indemnification or implied contractual indemnification." (Footnotes omitted.) *Johnson v Bundy,* 129 Mich App 393, 399; 342 NW2d 567 (1983), *lv pending.*

There is no question here that active negligence was alleged against defendant. In fact, a reading of the extensive allegations contained in the principal plaintiff's complaint against defendant reveals myriad allegations of active negligence, and none of the allegations are based on vicarious or derivative liability. The jury, in fact, found defendant negligent. Since an allegation of active negligence precludes pursuit of an implied contract of indemnity claim, and since such allegations existed in the instant case, the trial court properly granted summary judgment to Ford on that basis.

Affirmed.