*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY LUCILLE NOVOTNY-MOORE,

　　　　　Plaintiff-Appellant,

v

TEDDY DUANE O'DELL, SR.,

　　　　　Defendant-Appellee.

UNPUBLISHED
June 6, 2019

No. 342522
Otsego Circuit Court
LC No. 17-016740-NO

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

A jury determined that the defendant landowner was not negligent and therefore not liable to plaintiff for an injury she sustained on his land. Plaintiff complains that the trial court should have resolved as a matter of law whether she was an invitee or a licensee instead of directing the jury to decide the issue. The evidence created a question of fact in this regard, however, meriting the jury's consideration. Plaintiff further challenges the trial court's exclusion of evidence regarding the condition of the premises more than a month after her injury and the subsequent landowner's remedial actions. We discern no errors and affirm.

## I. BACKGROUND

Seventy-six year-old Mary Novotny-Moore fell on March 17, 2016, at the home of her brother, Teddy O'Dell, Sr. O'Dell was holding a sale in preparation for his move to Florida. Novotny-Moore called ahead to confirm the sale and then brought her friend, June Cross, to purchase a chest of drawers. Novotny-Moore bought a table and six chairs as well. After making their purchases, Novotny-Moore showed Cross the backyard. The women exited the back door and stepped onto a cement back porch. The cement slab was bordered with landscape timbers. Novotny-Moore stepped on a timber and claimed that it "gave way." She fell forward and hit her head. She described that the wood appeared "[w]eathered" and "[o]ld" and identified the cause of her fall as "[d]efective wood." Novotny-Moore claimed that right after her fall, O'Dell expressed that the wood "was splitting or cracking" and that "he thought he should have taken it up" earlier.

O'Dell, however, testified that no one had ever fallen on his back porch or complained about its condition. He had not "noticed" that "the timber [was] soft," only that "it had about an eighth of an inch wide crack almost the full length of the eight foot." To determine whether the timber was rotting, O'Dell asserted, he would have been required to dig it up. But, O'Dell conceded, he had installed the timber 14 years earlier and had never replaced it. O'Dell further asserted that he did not "know why [Novotny-Moore] fell"; he posited only that "[h]er foot might have slipped off of [the timber]." He would not "admit that [the timber] gave way when [Novotny-Moore] stepped on it because it was old."

Novotny-Moore alleged that she suffered dizziness, nausea, memory problems, pain and numbness, and hearing and vision loss after her fall. She did not immediately associate her symptoms with a head injury as she had long suffered from Meniere's disease, which also causes dizziness and nausea. Her symptoms following her fall were different in character and lasted longer. In June 2016, a cousin described suffering from dizziness and nausea following a head injury and "[a] light bulb c[a]me on." Novotny-Moore then reported the fall to her doctor, underwent an MRI, and began treatment. Due to the delay in realizing the cause of her injuries, Novotny-Moore did not timely preserve evidence regarding the condition of the subject landscape timber. Rather, she noted that the person who purchased the home from O'Dell replaced the timber "shortly after he moved in."

Novotny-Moore filed a negligence (or premises liability) action against O'Dell, alleging that he knew or should have known of the dangerous condition and that he knew or should have known that Novotny-Moore did not know about the condition and could not have discovered it on her own. Novotny-Moore accused O'Dell of "violat[ing] his duty to properly maintain his home . . . to prevent" injury and of failing to warn her of the condition. Neither party sought summary relief following discovery and Novotny-Moore's claim proceeded to a jury trial. The jury determined that O'Dell was not negligent and the trial court entered "a no-cause of action verdict" in O'Dell's favor. Novotny-Moore appeals this judgment.

## II. VISITOR STATUS

Novotny-Moore first contends that the trial court should have determined as a matter of law that she was an invitee at O'Dell's home and therefore that O'Dell owed her a duty to make the property safe. Novotny-Moore asserts that there was no question of fact that she was an invitee, rather than a licensee, and that the court should have instructed the jury as such.

Before trial, the attorneys and the judge apparently participated in a phone conference to discuss the jury instructions. The court recounted on the record, "There was a question potentially about whether or not Ms. Novotny-Moore was an invitee or a licensee." Plaintiff's counsel contended that Novotny-Moore was an invitee at O'Dell's home because he was conducting a moving sale for monetary benefit. Defense counsel asserted that there existed a question of fact for the jury because although Novotny-Moore purchased items at the sale, O'Dell's home was not a place of business and the sale would not "preclude[] [the jury] from still finding that his sister coming to his home would still be considered a social guest" and a licensee.

The court ruled, "I think it's pretty clear that there was an invitation to come over to view things. It was expressed." However, the transaction "doesn't fall distinctly within a business dealing;" "it was a . . . garage sale and clearly wasn't his business." Ultimately, the court reasoned, "it boils down to whether or not the sale of property from a home to a sister, or to anyone else, is a business or commercial purpose." The court personally believed that the situation "probably loosely fits a commercial or business dealing[]," but found "it's obviously a question of fact." Accordingly, the court decided to read M Civ JI 19.01 to allow the jury to determine whether Novotny-Moore was an invitee or licensee. Plaintiff's counsel renewed his objection before the court instructed the jury, but the trial court stood firm. The court noted that M Civ JI 19.01 "should be given only if there is a factual issue as to the legal status of the Plaintiff as invitee, licensee, or trespasser." The court had "already determined after argument by counsel and input, there is at least some factual issue as to that" and the issue had to be placed before the jury.

The trial court proceeded to instruct the jury on the various elements of the negligence/premises liability claim, including the duty of care. As to the duty of care, the court began by stating:

> To determine the duty owed to Plaintiff, you must first determine whether Plaintiff was an invitee or licensee. An invitee is a person who is invited to enter or remain on land, premises, a place of business for a commercial benefit to the possessor of the land, premises, place of business, or for a purpose directly or indirectly connected with business dealings with the possessor. An invitation may be either expressed or implied.

> A licensee is a person who is invited to enter on land, premises, a place of business for any purpose other than a business or commercial one, with the expressed or implied permission of the owner in control of the land, premises, place of business. A social guest is a licensee, not an invitee. . . .

"As a general rule, if there is evidence from which invitee status might be inferred, it is a question for the jury." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 595; 614 NW2d 88 (2000). A party's status is therefore not automatically a question of law for the court to decide. As defined in *Stitt*, 462 Mich at 596-597:

> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. . . . Typically, social guests are licensees who assume the ordinary risks associated with their visit

> . . . An "invitee" is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or

-3-

understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception. [Cleaned up.[1]]

In *Stitt*, the Supreme Court took great pains to consider the parameters of invitee status. Ultimately, the Court reasoned:

[W]e conclude that the imposition of additional expense and effort by the landowner, requiring the landowner to inspect the premises and make them safe for visitors, must be directly tied to the owner's commercial business interests. It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, we conclude that the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. Thus, we hold that the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: In order to establish invitee status, a plaintiff must show that the premises were held open for a commercial purpose. [*Id*. at 604.]

Another important lesson from *Stitt* is that the premises need not be primarily commercial in nature for a visitor to be considered an invitee; a person may be an invitee if the landowner opened the premises at a specific time for commercial purposes. In *Stitt*, the Court determined that individuals entering a church may be invitees if they are there for a fundraiser or are hired to complete a job. *Id*. at 601-603. But the visitors can also be licensees if they are there for a noncommercial purpose, such as to attend services or a meeting. *Id*. at 604-605.

A home, like a church, can be opened to guests for both commercial and noncommercial purposes. In *Hottman v Hottman*, 226 Mich App 171, 175; 572 NW2d 259 (1997), this Court held that a relative who came to the defendant's home to gratuitously assist in repairing the defendant's roof was an invitee because he "was on defendant's premises for the purpose of performing services beneficial to defendant." In *Kelsey v Lint*, 322 Mich App 364, 376; 912 NW2d 862 (2017), although a dog-bite case, this Court held that visitors to a garage sale hold invitee status. Other jurisdictions have found the same. See *Couto-Pressman v Richards*, 63 A3d 856, 860 (Pa Comm Ct, 2012); *Filipowicz v Diletto*, 350 NJ Super 552, 558; 796 A2d 296 (2002) (holding that people attend yard and garage sales "to shop" "not to engage in a social gathering" and therefore are invitees).

O'Dell contends that there still remained a question of fact regarding Novotny-Moore's status because she had completed her business at the sale and essentially engaged in a frolic and detour by taking Cross outside to admire the backyard. This could transform Novotny-Moore's status to that of a licensee. In *Burnett v Bruner*, 247 Mich App 365, 368-369; 636 NW2d 773

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

(2001), this Court declared that a visitor's status must be determined "at the time of the injury." And a visitor's status on the land may change if he or she exceeds the scope of his or her invitation. See *Constantineau v DCI Food Equipment, Inc*, 195 Mich App 511, 515-516; 491 NW2d 262 (1992), citing *Hutchinson v Cleveland-Cliffs Iron Co*, 141 Mich 346; 104 NW 698 (1905), and *Bennett v Butterfield*, 112 Mich 96; 70 NW 410 (1897).

We discern no error in the trial court's decision to leave to the jury the resolution of Novotny-Moore's status on the land. Novotny-Moore's "main purpose of going" to O'Dell's home was to bring a friend to purchase a chest of drawers. Indeed, Novotny-Moore called ahead to ensure that O'Dell was conducting his sale that day. However, the jury could reasonably conclude from the evidence that Novotny-Moore exceeded the scope of her invitation. Although no one directly testified that O'Dell did not have items for sale in the backyard, this would be a reasonable inference as the sale was held in March in Northern Michigan and the ground was "frozen" and "hard." Both Novotny-Moore and O'Dell testified that Novotny-Moore took Cross into the backyard to show it off, and not to purchase any items. Had Novotny-Moore been a stranger who strayed from the sale to inspect other areas of the premises, she might have been deemed a trespasser. As she is the owner's sister, however, and was otherwise permitted to freely roam O'Dell's home, the jury could reasonably determine that she was a licensee. The facts before the court represented a close case, warranting leaving the issue to the jury as the finders of fact. Novotny-Moore is not entitled to relief in this regard.

## III. ADMISSIBILITY OF EVIDENCE

Novotny-Moore also challenges the trial court's exclusion of testimony from Robert LaDuke, the person who purchased the home from O'Dell, that he fell on the same landscape timber within 40 days of the incident and that he replaced the timber to prevent another fall. The court also excluded a picture of the removed timber taken long after Novotny-Moore's fall. We review for an abuse of discretion a trial court's evidentiary rulings and consider de novo any underlying questions of fact. *Lockridge v Oakwood Hosp*, 285 Mich App 678, 699; 777 NW2d 511 (2009).

Plaintiff's counsel sought admission of LaDuke's testimony that shortly after he moved into O'Dell's former home, he discovered that the subject landscaping timber was rotted, leading him to replace it. Plaintiff's counsel conceded that remedial measures taken by a party are not admissible. However, counsel asserted, "there is no bar to [evidence of] subsequent remedial measures" taken by a nonparty. Plaintiff's counsel noted that he took a picture of the rotted timber after it was removed "last summer," which would have been the summer of 2017 and more than a year after Novotny-Moore's fall.[2]

Plaintiff's counsel asserted that LaDuke's testimony and the photograph were relevant because O'Dell claimed that he did not know and had no way to know about "the poor condition

---

[2] Counsel's record statement contradicts Novotny-Moore's later assertions that this picture was taken only months after her fall in the summer of 2016.

of this wood." Counsel contended that LaDuke's discovery of the timber's condition and the advanced state of the deterioration were evidence from which the jury could infer that O'Dell should have known of the timber's condition at the time of Novotny-Moore's fall. Counsel further asserted that the jurors could use their "common sense" about the rate of deterioration of wood.

As to the remedial measure, plaintiff's counsel noted that such evidence is generally inadmissible because it would be a disincentive to premises owners to remedy dangerous conditions on their land. But counsel cited *Denolf v Frank L Jursik Co*, 395 Mich 661; 238 NW2d 1 (1976), and *Hadley v Trio Tool Co*, 143 Mich App 319; 372 NW2d 537 (1985), for the proposition that remedial measures taken by nonparties are admissible.

The court noted that Novotny-Moore had already testified without objection that LaDuke replaced the timber following her fall. Defense counsel interjected that he should have objected because that evidence was irrelevant to whether O'Dell knew or should have known at the time of the accident that the timber was rotten.

The court ultimately excluded the proffered evidence in a ruling that spanned nearly 10 transcript pages. The court first analyzed the admissibility of the evidence under MRE 407, which provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The court noted that plaintiff's counsel had not made an offer of proof that he was presenting the evidence "for another purpose," so the evidence was not admissible under the second sentence of the evidentiary rule. Rather, plaintiff's counsel focused on the fact that the remedial measure was made by a nonparty. The court then proceeded to analyze the caselaw cited by Novotny-Moore.

In *Denolf*, 395 Mich at 663, the Supreme Court granted leave to determine "whether the rule of evidence excluding proof of post occurrence modifications is applicable where the subsequent modification is made by a third person not a party to the litigation." The Court noted that the exclusionary rule "is primarily grounded in the policy that owners would be discouraged from attempting repairs that might prevent future injury if they feared that evidence of such acts could be introduced against them." *Id*. at 667. However, "[t]his policy consideration is absent in a case, such as this, where imposition of liability is not sought against the person taking the remedial action." *Id*. Evidence of subsequent repairs made by a third party is admissible, the Supreme Court held,

> confined to the context where (1) evidence of subsequent remedial action is otherwise relevant, (2) admission of the evidence would not offend policy considerations favoring encouragement of repairs, and (3) the remedial action is

not undertaken at the direction of a party plaintiff so that it does not constitute a self-serving, out-of-court declaration by that party. [*Id*. at 669-670.]

This standard was followed in *Hadley*.

Here, the second and third factors permitting admission were met: O'Dell did not direct the remediation of the dangerous condition and its admission would not discourage such repairs. But the evidence was not "otherwise relevant." *Id*. at 669. To be *otherwise* relevant, the evidence may "not directly compel an inference of negligence from the mere fact that a subsequent modification occurred." *Hadley*, 143 Mich App at 328. The trial court found that plaintiff's counsel in this case had not made

> any additional offer of proof that [the proffered] evidence is somehow . . . relevant to anything other than the issue of negligence. In other words, if allowed, that type of evidence would directly compel - - could only be offered for that purpose. It would directly compel an inference of negligence from the fact that it was removed, from the fact that there was a subsequent modification.

The trial court in this case proceeded to discuss evidentiary relevancy. To be relevant, evidence must be probative and material, the court stated. The probity and materiality of the timber replacement only compelled a finding of negligence, the inference forbidden by *Denolf*. This, standing alone, was sufficient reason to exclude the evidence—the evidence was relevant only to establish negligence.

To strengthen its analysis, however, the trial continued to determine whether the danger of unfair prejudice arising from the proffered evidence substantially outweighed its probative value, mandating exclusion under MRE 403. The danger of unfair prejudice was too high in this case, the court found, because the only conclusion that could be reached from LaDuke's subsequent remedial measure was that O'Dell was negligent in not making the repair earlier. We discern no error in the court's analysis. The trial court acted well within its discretion in excluding LaDuke's testimony about his replacement of the timber.

Finally, the court addressed the "offer of proof related to the condition of the wood some 40 days after" the accident. The court found irrelevant evidence regarding "the condition of the property following the accident" and therefore precluded plaintiff's counsel from asking LaDuke to describe the condition of the timber more than a month after Novotny-Moore's fall. "[S]everal independent things could have happened in between," the court noted. However, the court reflected, the jury already heard from Novotny-Moore that the subsequent owner found the timber defective and replaced it, and that record evidence was not stricken. The court later sustained an objection raised by defense counsel when plaintiff's counsel again tried to elicit testimony that the timber had been replaced, reminding counsel, "You can ask about the condition of the wood at the time" of the accident, but cannot "suggest" that subsequent remedial measures were taken.

Although the trial court did not separately address the admissibility of the photographic evidence, its reasoning covered this evidence as well. A defendant can only be liable for negligence in a premises liability action if he had "actual or constructive notice of the condition."

*Banks v Exxon Mobil Corp*, 477 Mich 983, 983; 725 NW2d 455 (2007). An owner is deemed to have constructive notice if the condition "has existed a sufficient length of time" and the defect was discoverable. *Id*. at 983-984. Photographic evidence of the timber's condition more than a year after the accident would be completely irrelevant to establishing its condition at the time of Novotny-Moore's fall. Accordingly, the trial court properly excluded that evidence.

We affirm. Defendant, as the prevailing party, may tax his costs pursuant to MCR 7.219.


/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra