BACCO CONSTRUCTION COMPANY v AMERICAN COLLOID
COMPANY

Docket No. 82943. Submitted October 1, 1985, at Marquette.—Decided
January 21, 1986.

Plaintiff, Bacco Construction Company, was a general contractor
on a project to construct a waste water lagoon and irrigation
system in Houghton County. Defendant McNamee, Porter &
Seeley (MPS) was employed by the county as the project
engineer. Plaintiff's contract with the county specified that the
lagoons were to be constructed with a seal using either clay,
powdered bentonite, or a combination of clay and bentonite.
Prior to the letting of the project on December 14, 1977,
defendant American Colloid Company indicated an interest in
supplying bentonite materials for the lagoons. Following discus-
sions among the various parties, on August 8, 1978, MPS issued
a contract change order which provided that the seal on the
lagoons would be changed from specifications known as GS 50
to SG 40. SG 40 is a Volclay bentonite product manufactured
by Colloid. D. J. Moriva Company, Inc., apparently acted with
Colloid in selling the bentonite product. After plaintiff applied
the bentonite material in the lagoons in accordance with the
provisions of the contract, tests were performed and it appeared
that the lagoons failed to meet the standards contained in the
specifications. The county thereafter suspended certain pay-
ments to the plaintiff for work done on the project and notified

REFERENCES

Am Jur 2d, Architects §§ 23-25.

Am Jur 2d, Damages §§ 8 et seq.

Am Jur 2d, Limitation of Actions §§ 80 et seq.

Am Jur 2d, Negligence §§ 47-53.

Architect's liability for personal injury or death allegedly caused by
improper or defective plans or designs. 97 ALR3d 455.

When statute of limitations begins to run on negligent design claim
against architect. 90 ALR3d 507.

When statute of limitations commences to run against claim for
contribution or indemnity based on tort. 57 ALR3d 867.

Construction contractor's liability to contractee for defects or insuf-
ficiency of work attributable to the latter's plans and specifica-
tions. 6 ALR3d 1394.

plaintiff of an extensive leak on July 17, 1979. On October 15, 1979, the county, through MPS, formally rejected the work done by plaintiff for not meeting contract specifications. Following discussions held among the parties, it was determined that, since all the parties denied responsibility, it would be in their best interests to correct the leakage problem, thereby eliminating the county from the controversy, but without admitting responsibility among themselves. Accordingly, in an agreement dated September 30, 1981, plaintiff, MPS and Colloid agreed to perform the corrective work. Plaintiff commenced this action in the Delta Circuit Court on September 20, 1982, after the corrective work was completed and the parties were unable to agree on responsibility for the lagoon leakage and the repair costs. Named as defendants were American Colloid Company, D. J. Moriva Company, Inc., Don J. Moriva, and McNamee, Porter & Seeley. The trial court, Clair J. Hoehn, J., on January 15, 1985, entered an order granting accelerated judgment in favor of defendants Colloid, D. J. Moriva Company, Inc., and Don Moriva and granting both accelerated and summary judgment in favor of defendant MPS. The court held with respect to Colloid, Moriva Company and Don Moriva that plaintiff's claims accrued on July 12, 1979, and were barred by the expiration of the three-year period of limitation. The court further ruled that the warranty count had expired on August 14, 1982, four years after the bentonite product was delivered to plaintiff. The court also held with respect to MPS that the expiration of the two-year period of limitation for professional malpractice barred plaintiff's claims and that, in addition, plaintiff's negligence claim was barred by summary judgment for the reason that MPS owed no duty to plaintiff. Plaintiff appeals. *Held:*

1. The repair agreement of September 30, 1981, does not purport to extend or waive any rights or defenses. Defendants were not bound to determine the merits of the dispute at a later date by the agreement and the agreement itself did not impose liability on any party. The trial court failed to address the issue raised in Count I regarding the significance of the agreement. On remand, the parties are free to raise the significance of the repair contract pleaded in Count I.

2. Plaintiff's alleged injury is to its financial expectations, therefore, the general six-year period of limitation set forth in MCL 600.5813 applies to plaintiff's negligence claims. Plaintiff's negligence claims were thus not barred and accelerated judgment was improperly granted on those claims.

3. The trial court erred in granting accelerated judgment on

the express warranty claim against the Colloid and Moriva companies. However, since the implied warranty claim against those defendants does not fall within the future performance exception of MCL 440.2725 and the cause of action accrued more than four years before this action commenced, the implied warranty claim against those defendants is barred by application of the four-year period of limitation provided in MCL 440.2725.

4. The Court of Appeals declined to specifically address the applicable statute of limitations with respect to Counts I, VII, VIII, IX and XI, since the trial court did not specifically address the issue and the parties did not address the issue with respect to these counts on appeal. The Court of Appeals noted, however, that since plaintiff's injury is not to persons or property, the three-year period of limitation pertaining to actions to recover damages for the death of a person or for injury to a person or property, MCL 600.5805(8), does not apply and accelerated judgment was erroneously granted if it was done on that basis. On remand, the parties are free to again raise this issue.

5. Count V of plaintiff's complaint is not so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. Plaintiff did state a cause of action against MPS and the trial court erred in granting the motion for summary judgment pursuant to GCR 1963, 117.2(1). Design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from the negligent performance of their professional duties, in spite of the lack of privity of contract. It is foreseeable that an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself. The risk of harm would include the financial hardship created by having to cure the defects which may very well not be caused by the contractor.

6. The trial court incorrectly stated that whatever plaintiff did, it did as a volunteer.

7. The order granting defendants' motions for accelerated judgment and summary judgment are reversed, except as to that part of the order regarding plaintiff's implied warranty claim against Colloid and Moriva companies which is barred by the statute of limitations.

Affirmed in part, reversed in part and remanded.

1. Limitation of Actions — Injuries to Persons or Properties — Negligence.

The statute of limitations which provides limits on actions to

recover damages for injuries to persons or property expressly applies to actions to recover damages for injuries to persons or property and not specifically to negligence actions; the focus is on the nature of the injury, not the label attached to the claim; negligence claims which do not seek recovery for injuries to persons or property are not governed by this statute (MCL 600.5805; MSA 27A.5805).

2. LIMITATION OF ACTIONS — NEGLIGENCE — PERSONAL ACTIONS — FINANCIAL EXPECTATIONS — MALPRACTICE.

The general six-year period of limitation for personal actions applies to a negligence action wherein the plaintiff does not seek to recover damages for injury to persons or property but, rather, seeks to recover damages for injury to its financial expectations; similarly, the two-year period of limitation for malpractice actions does not apply where the negligence suit is not for injuries to persons or property (MCL 600.5805[4], 600.5813; MSA 27A.5805[4], 27A.5813).

3. LIMITATION OF ACTIONS — UNSAFE AND DEFECTIVE IMPROVEMENTS — REAL PROPERTY.

The six-year period of limitation on an action for defective and unsafe improvements to real property does not apply to a negligence action where the plaintiff has not alleged an unsafe and defective improvement to property and has not suffered an injury to persons or property (MCL 600.5839[1]; MSA 27A.5839[1]).

4. LIMITATION OF ACTIONS — BREACH OF CONTRACT — SALE OF GOODS — UNIFORM COMMERCIAL CODE.

The Uniform Commercial Code provides a four-year period of limitation on an action for breach of any contract for sale of goods; a cause of action accrues under this section when tender of delivery is made except that where a warranty explicitly extends to future performance of the goods the cause of action accrues when the breach is discovered (MCL 440.2725; MSA 19.2725).

5. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment on the ground that the complaint fails to state a claim upon which relief can be granted is to be tested by the pleadings alone; the motion tests the legal basis of the complaint, not whether it can be factually supported; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged and, unless the claim is so clearly unenforceable as a matter of law that no factual devel-

opment can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

6. NEGLIGENCE — DESIGN PROFESSIONALS — CONTRACTS.

Design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from the negligent performance of their professional duties, in spite of a lack of privity of contract between the design professionals and the victims; it is foreseeable that an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to a third-party contractor who is responsible for applying those specifications to the job itself and the risk of harm would include the financial hardship created by having to cure the defects.

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Edward M. Kronk),* for plaintiff.

*Butch, Quinn, Rosemurgy, Jardis & Valkanoff, P.C.* (by *Terry F. Burkhart),* for American Colloid Company, D. J. Moriva Company, Inc., and Don J. Moriva.

*Conlin, Conlin, McKenney & Philbrick* (by *Neil J. Juliar),* for McNamee, Porter & Seeley.

Before: D. F. WALSH, P.J., and GRIBBS and SHEPHERD, JJ.

SHEPHERD, J. Plaintiff, Bacco Construction Company, commenced this action against defendants on September 20, 1982, seeking to recover the costs it incurred in repairing a waste water treatment lagoon system it had constructed for Houghton County. Plaintiff appeals as of right from a January 15, 1985, order granting accelerated judgment in favor of defendants American Colloid Company, D. J. Moriva Company, Inc., and Don Moriva, and granting both accelerated and summary judgment in favor of defendant McNamee, Porter & Seeley (MPS). We reverse the trial

court's order granting accelerated judgment and summary judgment in favor of defendants, except as to that part of the order regarding plaintiff's implied warranty claim against Colloid and Moriva Company which is barred by a statute of limitations.

Plaintiff's complaint provides the following description of the events leading to this lawsuit. Plaintiff was the general contractor on a project to construct a waste water lagoon and irrigation system in Houghton County. MPS was employed by the county as the project engineer. Plaintiff, as the low bidder on the project, entered into a contract with the County of Houghton. The contract provided various specifications for the project including that the lagoons were to be constructed with a seal using either clay, powdered bentonite, or a combination of clay and bentonite.

Prior to the letting of the project on December 14, 1977, Colloid indicated an interest in supplying bentonite materials for use in providing the seal for the lagoons. Following discussions among the various parties, on August 8, 1978, MPS issued a contract change order which provided that the seal on the lagoons would be changed from specifications known as GS 50 to SG 40. SG 40 is a Volclay bentonite product manufactured by Colloid.

Plaintiff alleged that it applied the material in the lagoons in accordance with provisions of the contract, and in the presence or under the observation of representatives of MPS, Colloid and Moriva Company. (Although Moriva Company's relationship to the project is not entirely clear, it appears that it acted with Colloid in selling the bentonite product.) After the installation of the material, tests were performed to determine the exfiltration rates of the lagoons, and, thereafter, it appeared that the lagoons failed to meet the standards

contained in the specifications. The county, with the approval and at the direction of its engineers, MPS, suspended and withheld payments to plaintiff for work done on the project. The county notified plaintiff of an "extensive leak" in a letter dated July 17, 1979. On October 15, 1979, the county, through MPS, formally rejected the work done by plaintiff for not meeting contract specifications.

Discussions were then held among the county, plaintiff and the defendants to determine responsibility for the leakage of the lagoons and the most appropriate method for correcting the problem. Since all parties denied liability, plaintiff and all defendants determined that it would be in their best interests to correct the leakage problem, thereby eliminating the county from the controversy, but without admitting responsibility among themselves. Accordingly, in an agreement dated September 30, 1981, plaintiff, MPS and Colloid agreed to perform corrective work on the lagoons. Although MPS and Colloid shared in bearing the costs of the corrective work, plaintiff expended most of the funds. In paragraph 4 of the agreement, the parties, though agreeing to participate in the corrective work, stated that none of them admitted liability for the lagoon problem and that the corrective work would be accomplished with the parties reserving the right to later litigate or arbitrate the matter, including the questions of how the responsibility and costs for the repair of the lagoons would ultimately be divided.

Plaintiff commenced this action on September 20, 1982, after the corrective work had been completed and the parties became unable to agree on responsibility for the lagoon leakage. The complaint contains eleven counts: Count I—based on the repair agreement itself and against all of the

defendants; Count II—breach of express and implied warranty claim against Colloid and Moriva Company; Count III—negligence claim against Colloid; Count IV—negligence claim against Moriva Company; Count V—negligence claim against MPS; Count VI—negligence claim against Don Moriva; Count VII—common law indemnity claim against all defendants; Count VIII—implied contract of indemnity claim against all defendants; Count IX—restitution and unjust enrichment claim against all defendants; Count X—negligent misrepresentation claim against Colloid, MPS and Moriva Company; Count XI—contribution claim against all defendants.

The trial court, in an opinion dated August 8, 1984, held with respect to Colloid, Moriva Company and Don Moriva that plaintiff's negligence claims accrued on July 12, 1979, and were barred by the expiration of the three-year period of limitation. The court further ruled that the warranty count had expired on August 14, 1982, four years after the bentonite product was delivered to plaintiff. On this basis and without specifically ruling on the effect of the statute of limitations on Counts I, VII, VIII, IX and XI, the court granted accelerated judgment in favor of these defendants on plaintiff's entire complaint. In a subsequent opinion dated December 11, 1984, the court held with respect to defendant MPS that expiration of the two-year period of limitation for professional malpractice barred plaintiff's claims and that, in addition, plaintiff's negligence claim was barred by summary judgment for the reason that MPS owed no duty to plaintiff. This opinion too neglects to mention Counts I, VII, VIII, IX, and XI of plaintiff's complaint.

I

## COUNT I

In Count I of its complaint, plaintiff sought recovery under the September, 1981, agreement among the parties to repair the lagoons. Plaintiff alleged that the parties agreed to determine who was responsible for the project's failure and to reimburse costs accordingly. Similarly plaintiff argues on appeal that the parties "intended to be *bound* to determine, at some date after the lagoon repairs had been completed, by process of arbitration, litigation or otherwise, the merits of their dispute, *i.e.,* who *caused* the failure of the lagoons and, based on that, by whom and in what proportion the costs should ultimately be borne". (Emphasis in original.)

Paragraph 4 of the agreement provides:

"4. *Reservation of Rights.*
"It is specifically understood and agreed that participation by the parties in this Agreement to cause the corrective work to be accomplished shall *not* be regarded as an admission by any of the parties as to liability for the lagoon problem, nor an agreement by any of the parties to ultimately be responsible for the payment of any sum whatsoever. This Agreement and the corrective work shall be accomplished with the parties reserving the right to thereafter litigate or arbitrate any matter whatsoever, including the questions of how the responsibility and cost for repairs of the lagoons shall ultimately be divided, with each of the parties expressly denying any liability to make any permanent contribution whatsoever to the cost of such repairs." (Emphasis in original.)

We agree with defendants that they were not bound to determine the merits of the dispute at a later date by this agreement and that the agree-

ment itself did not impose liability on any party. As the trial court stated, the agreement does not purport to extend or waive any rights or defenses. However, the agreement reserves the rights of all of the parties "to thereafter litigate or arbitrate any matter whatsoever, including * * * responsibility" for the lagoons' failure. A fair reading of paragraph 4 of the agreement would allow the parties to argue that by mutual agreement they held in abeyance the question of who is primarily responsible *to the county* for the failure of the lagoons and in what proportion. While not creating any new causes of action, under the agreement, once the county was removed by virtue of the repair, each party may argue that it stands in the place of the county (as well as in its own) in order to determine responsibility for the project's failure. Although plaintiff conceded in its brief that it had no direct contract claim against MPS (the project engineer), it has alleged and does argue that there is liability arising out of the September, 1981, agreement. Count I of plaintiff's complaint is based on this agreement and may be analyzed in terms of the county's claims against plaintiff and the defendants and the resulting proportionate share of the repair costs owed by each defendant to the county and, as a consequence of the contract, to each other. The trial court failed to address this issue no doubt because it dismissed all claims for other reasons. On remand, the parties are free to raise the significance of the contract pleaded in Count I.

We will address the question of whether a statute of limitations bars this count, as well as the plaintiff's remaining claims, below.

## II

## Statute of Limitations

### A. Negligence Claims

Defendants argue that the action is barred by MCL 600.5805(8); MSA 27A.5805(8), which states that the period of limitation is three years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property. MPS argues, in the alternative, that the action is barred by the two-year limitation for malpractice actions where the injury is to persons or property, MCL 600.5805(4); MSA 27A.5805(4).

Plaintiff, on the other hand, argues that since its damages were not to its person or property, but rather to its financial expectations, the applicable statute of limitations is MCL 600.5813; MSA 27A.5813, which states that all other personal actions shall be commenced within the period of six years after the claims accrue. Plaintiff, in the alternative, argues that MCL 600.5839; MSA 27A.5839 applies, which provides for a six-year limitation period where the action is to recover for injury to persons or property arising out of a "defective and unsafe condition of an improvement to real property, * * * sustained as a result of such injury against any state licensed architect or professional engineer * * *".

In support of their position, defendants cite *Southgate Community School Dist v West Side Construction Co,* 399 Mich 72; 247 NW2d 884 (1976), *reh den* 400 Mich 951 (1977). In *Southgate,* plaintiff entered into an agreement with the defendant for the construction of concrete slab floors, upon which the defendant was to supply and lay resilient tiles. The tiles selected by the defendant

were manufactured by Kentile Floors, Inc., which had no direct relationship to the plaintiff. Kentile sold the tiles to Advance Floor Coverings, Inc., from whom they were acquired by the defendant or its subcontractor. After the installation, the plaintiff filed a complaint which alleged that the tiles were defective and sought recovery for the increased maintenance costs at the school which were necessary for the removal of the exudations and for an additional amount for tile replacement.

The Court held that the loose, cracked and oozing floor constituted an injury to the plaintiff's property. *Id.,* p 80. The Court stated that although the tiles were the manufacturer's product, they nevertheless had become the plaintiff's property. The Court therefore concluded that the three-year period of limitation governing actions to recover damages for injuries to property applied. *Id.,* p 81.

In arguing that MCL 600.5813; MSA 27A.5813 is the applicable statute of limitations, plaintiff cites *Tel-Twelve Shopping Center v Sterling Garrett Construction Co,* 34 Mich App 434; 191 NW2d 484 (1971). In *Tel-Twelve,* the defendant agreed to do construction work for the plaintiff. A neighbor of the plaintiff sued the plaintiff in a separate action for damages caused by the defendant's work. The litigation was resolved by a settlement between the parties, and a consent judgment for $25,000 was entered in favor of the neighbor against the plaintiff. Subsequently, the plaintiff instituted suit against the defendant, alleging that the defendant had breached its contract with the plaintiff by causing damage to the property of adjacent landowners, which resulted in the judgment against the plaintiff in the prior separate action. The plaintiff also alleged certain acts of negligence by defendant in performing the contract for which the plaintiff had paid damages and claimed that it

became subrogated to the rights of the adjacent property owners as a result of the judgment previously entered.

The Court held that the first count in the plaintiff's complaint was controlled by the six-year period of limitation in MCL 600.5807(8); MSA 27A.5807(8), since the damage which was done concerned the plaintiff's financial expectations, not actual damage to the plaintiff's property or physical injury to his person. 34 Mich App 439.

Plaintiff also cites *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). In *Borman's,* the plaintiff entered into an agreement with one of the defendants in which that defendant agreed to construct a shopping center and warranted that storm and sanitary sewers would be available to the leased premises. The defendant contracted with co-defendant Tri-Cities Construction & Supply Company for the construction of the sewers, and Tri-Cities in turn retained a co-defendant architectural firm to design the drain system. The plaintiff's complaint alleged that the drainage system did not function properly with the result that the plaintiff experienced flooding. Count I of the complaint alleged that the defendant breached an express warranty to provide an adequate drainage system; Count II alleged that the negligent and improper construction of the drainage system by Tri-Cities constituted a breach of express and implied warranties; Count III stated similar allegations against the architectural firm. The plaintiff sought damages for expenditures for the repair and reconstruction of the drainage system and for the loss of profits and damage to its reputation.

The Court held that the applicable period of limitation was six years, based on either MCL 600.5807(8); MSA 27A.5807(8), or MCL 600.5813;

MSA 27A.5813. 60 Mich App 189. The Court stated that a close examination of the plaintiff's complaint disclosed no allegation of property damage and that its damages were strictly financial. The Court observed that there was no allegation that the faulty drainage system caused any injury to any other property or to any persons and that neither the buildings nor the pavement were damaged by virtue of the failure of the water to drain properly. The Court further noted that the claim was that, because the drain did not work, the plaintiff was forced to expend money to replace it and lost profits during periods of flooding and reconstruction.

We initially note for the purpose of clarification that, although frequently referred to as the "negligence" statute of limitations, MCL 600.5805; MSA 27A.5805 expressly applies to actions to recover damages for injuries to persons or property and not specifically to negligence actions. See generally *Coats v Uhlmann,* 87 Mich App 385; 274 NW2d 792 (1978). The focus is on the nature of the injury, not the label attached to the claim. Negligence claims which do not seek recovery for injuries to persons or property are not governed by this section of the Revised Judicature Act. It is clear in the present case that plaintiff does not seek to recover damages for injury to property. Rather, as was the case in *Borman's* and *Tel-Twelve,* plaintiff's injury is to its financial expectations. *Southgate* is distinguishable from the present case because there was no question there that the defective tiles were installed on the *plaintiff's* property and had become the plaintiff's property. Here, although plaintiff purchased the bentonite material, plaintiff did not own the property on which the product was applied and with which it became a part. Moreover, it is difficult to conceive

of how the bentonite itself was damaged. Accordingly, the general six-year period of limitation set forth in MCL 600.5813; MSA 27A.5813 applies, rather than the statutory exception for injuries to persons or property set forth in MCL 600.5805(8); MSA 27A.5805(8).

Similarly, since plaintiff has not suffered an injury to property or persons, the two-year malpractice statute of limitations set forth in MCL 600.5805(4); MSA 27A.5805(4) does not apply, as that subsection too by its language only governs suits for injuries to persons or property. *Coats v Uhlmann, supra,* p 393.

For these same reasons, we reject plaintiff's alternative contention that the six-year period of limitation for defective and unsafe improvements to real property applies, MCL 600.5839(1); MSA 27A.5839(1). Not only has plaintiff not alleged an unsafe and defective improvement to property, but again, as required by this statute as well, plaintiff has not suffered an injury to persons or property.

Because of our determination that the general six-year period of limitation applies, we conclude that plaintiff's negligence claims were not barred and accelerated judgment was improperly granted.

### B. Warranty Claims

In Count II, plaintiff sets forth a claim alleging breach of express and implied warranty against Colloid and Moriva Company. The trial court held that the period of limitation on the warranty claims, "including the '30 year' express warranty" had expired August 14, 1982, four years after delivery of the bentonite seal material. Defendants concede that the express warranty claim is not barred, but argue that the implied warranty claim is barred.

The Uniform Commercial Code, in MCL

440.2725; MSA 19.2725, provides a four-year period of limitation on an action for breach of any contract for sale of goods. Under this section, a cause of action accrues when tender of delivery is made "except that where a warranty explicitly extends to future performance of the goods" the cause of action accrues when the breach is discovered.

We agree with plaintiff and defendants that the trial court erred in granting accelerated judgment on the express warranty claim, but hold that, since the implied warranty claim does not fall within the future performance exception of MCL 440.2725; MSA 19.2725, and the cause of action accrued more than four years before this action was commenced, the implied warranty claim is barred.

## C. Other Claims

Although the trial court granted accelerated judgment on all claims, it did not specifically address the applicable statute of limitations with respect to Count I (based on the repair agreement), Count VII (common law indemnity), Count VIII (implied contract of indemnity), Count IX (restitution), and Count XI (contribution). Nor have the parties addressed this issue with respect to these counts on appeal.

Under the circumstances, we decline to specifically address the applicable statute of limitations with respect to these counts, although we note that since plaintiff's injury is not to persons or property, the three-year period of limitation (MCL 600.5805[8]; MSA 27A.5805[8]) does not apply and accelerated judgment was erroneously granted if it was done on that basis. On remand, the parties are free to again raise this issue.

## III

### SUMMARY JUDGMENT IN FAVOR OF MPS

The trial court also granted summary judgment to MPS, the project engineer, on the ground that it owed no duty to plaintiff as a matter of law. Although the trial court did not state whether summary judgment was based on failure to state a claim or no genuine issue of material fact, it is apparent from the court's opinion that summary judgment was granted under the former.

"The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion is to be tested by the pleadings alone. * * * The motion tests the legal basis of the complaint, not whether it can be factually supported. * * * The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied." (Citations omitted.) *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978).

Count V of plaintiff's complaint alleges that MPS, as the project engineer, breached a duty owed to plaintiff to use reasonable care in the selection, testing and approval of materials, as well as the selection, approval and supervision of the methods and manner in which the materials were installed. MPS argues that there was no undertaking or agreement to act for plaintiff's benefit, that it was on the project solely to benefit its employer (the county), and that it accordingly owed no duty to plaintiff.

Although Michigan courts have not addressed

the issue of whether a contractor may maintain an action against a project engineer or architect in the absence of a contractual relationship, the clear trend in other jurisdictions is to allow a negligence action without direct privity of contract. See generally Anno: *Tort Liability of Project Architect for Economic Damages Suffered by Contractor,* 65 ALR3d 249.

In *Donnelly Construction Co v Oberg/Hunt/ Gilleland,* 139 Ariz 184; 677 P2d 1292 (1984), where a contractor brought suit against architects alleging that errors in plans and specifications prepared by the architects resulted in increased cost of construction, the court held that the contractor had stated a cause of action for negligence, since it was foreseeable that the contractor, hired to follow the plans, would incur increased costs if those plans were not accurate, in spite of the lack of privity of contract. The court held that design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from negligent performance of their professional duties.

In a similar case the Florida Supreme Court held:

"From the foregoing, we are satisfied that the principle is established that a third party general contractor, who may foreseeably be injured or sustained *[sic]* an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity. * * *." *A R Moyer, Inc v Graham,* 285 So 2d 397, 402; 65 ALR3d 238, 245 (Fla, 1973).

Accord, *Shoffner Industries, Inc v W B Lloyd Construction Co,* 42 NC App 259; 257 SE2d 50 (1979); *Owen v Dodd,* 431 F Supp 1239 (ND Miss, 1977);

*Detweiler Bros, Inc v John Graham & Co,* 412 F Supp 416 (ED Wash, 1976).

One case seemingly favoring MPS's position is *Harbor Mechanical, Inc v Arizona Electric Power Cooperative, Inc,* 496 F Supp 681 (D Ariz, 1980). In *Harbor,* the defendant power cooperative hired the defendant engineering firm to prepare plans and specifications for the construction of a plant and to supervise the contractors. The plaintiffs were hired by the defendant power cooperative to perform certain phases of the construction. Delays by the contractors caused the plaintiffs certain losses and plaintiffs brought suit against the engineering firm, which included claims of negligence and negligent representation. The court held that the engineering firm owed no duty to the plaintiffs unless the plaintiffs were parties to the contract or intended beneficiaries of the contract. However, the validity of the court's decision has been questioned in later cases. In *Gilbane Building Co v Nemours Foundation,* 606 F Supp 995 (D Del, 1985), the court stated that the validity of the *Harbor* decision "is in serious doubt" after the decision by the Arizona Supreme Court in *Donnelly Construction Co v Oberg/Hunt/Gilleland, supra.*

Defendants also cite *Peyronnin Construction Co, Inc v Weiss,* 137 Ind App 417; 208 NE2d 489 (1965). In *Peyronnin,* the prime contractor brought an action against the engineer alleging negligence in making computations in the amount of dirt to be excavated, such computations having been prepared for the excavation subcontractor. The court held that there was no cause of action since there was no privity of contract, no consideration, and because no relationship existed to create a duty. *Peyronnin,* p 428.

However, in *Essex v Ryan,* — Ind App —; 446

NE2d 368, 372 (1983), the Indiana court limited the scope of its ruling in *Peyronnin* by apparently holding that actual knowledge of the contractor's reliance on the plans could result in a duty by the engineer to the contractor.

We adopt the reasoning of *Donnelly Construction* in the present case. It is certainly foreseeable that an engineer's failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself. The risk of harm would include the financial hardship created by having to cure the defects which may very well not be caused by the contractor.

Accordingly, we conclude that Count V of plaintiff's complaint is not so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Partrich, supra,* p 730. Plaintiff did state a cause of action against MPS and the court erred by granting the motion for summary judgment pursuant to GCR 1963, 117.2(1). We further note that the trial court's statement that "whatever [plaintiff] did, it did as a volunteer", is incorrect in light of the parties' agreement to make the repairs and in light of the county's rejection of plaintiff's work.

The trial court's order granting defendants' motions for accelerated judgment and summary judgment are reversed, except as to that part of the order regarding plaintiff's implied warranty claim against Colloid and Moriva Company which is barred by the statute of limitations.

Affirmed in part, reversed in part and remanded for further proceedings.