952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GREAT AMERICAN INSURANCE COMPANY, an Ohio Corporation,
Plaintiff-Appellant,
v.
WADE-TRIM/ASSOCIATES, Inc., a Michigan Corporation, and
Somat Engineering, Inc., a Michigan Corporation,
jointly and severally, Defendants-Appellees.
 No. 90-1948.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant Great American Insurance Company ("Great American"), an Ohio Corporation, appeals the district court's grant of summary judgment for Defendants-Appellees Wade Trim/Associates, Inc. ("Wade Trim") and Somat Engineering, Inc. ("Somat"), Michigan Corporations, for failure to state a claim for negligence and indemnity under Michigan law. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 In February, 1988, J.C. Harte & Sons, Inc. ("Harte") contracted with the Monroe County Drain Commissioner ("Drain Commissioner") to build a sewer system in Ida and Raisinville Townships in Monroe, Michigan. Great American provided a performance and payment bond as the surety for Harte.
 
 
 3
 The Drain Commissioner employed Wade Trim to design the sewer system and to be its on-site representative. Wade Trim retained Somat as the testing and inspection agency for trench backfill.
 
 
 4
 During the construction, an inspection revealed that the sewer pipe that Harte installed had cracked. In addition, there were problems with the road settling in a number of areas. The Drain Commissioner and the Board of County Road Commissioners of the County of Monroe ("Road Commission") requested that Harte correct the problem, but Harte refused. On February 20, 1989, the Drain Commissioner notified Harte that it had terminated its contract. The Drain Commissioner hired another contractor and the repairs were completed in March 1990. The final pavement on the roadways, however, has not been completed as of this date.
 
 
 5
 The Drain Commissioner and Road Commission sued Harte and Great American in Monroe County Circuit Court for monetary damages resulting from the defective sewer installation and road work. Great American removed the suit to Federal District Court in the Eastern District of Michigan. Great American also brought a motion to add Wade Trim and Somat as third party defendants in the lawsuit filed by the Drain Commissioner and the Road Commission. The district court denied the motion.[1] Consequently, Great American brought a separate action against Wade Trim and Somat seeking a declaratory judgment that Wade Trim and Somat should indemnify Great American for any liability.
 
 
 6
 Count I of the complaint alleged that Wade Trim's negligence and intentional acts prevented Harte from performing its obligations in accordance with the contract with Monroe County. Similarly, Count II alleged that Somat was negligent in testing the backfill that was placed on the project. Wade Trim and Somat moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion to dismiss and entered an order of dismissal with prejudice on July 27, 1990.
 
 II.
 
 7
 Because the district court based its determination on facts beyond the pleadings, we will apply the summary judgment standard of review. See Rogers v. Stratton Industries, Inc., 798 F.2d 913 (6th Cir.1986). Whether the district court properly granted summary judgment in favor of defendants is a question of law subject to de novo review. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). The moving party has the burden to conclusively show that no genuine issue of material fact exists. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. denied, 444 U.S. 986 (1979).
 
 III.
 
 8
 Great American asserts that the district court erred in granting summary judgment for the appellants. Great American contends that under Michigan law it has a cause of action for negligence and a claim for indemnity against Wade Trim and Somat. Wade Trim and Somat respond that Great American is precluded, as a matter of law, from bringing a cause of action for negligence and a claim for indemnity. Because these issues are ripe for adjudication, we address the merits.
 
 A. NEGLIGENCE
 
 9
 The district court ruled that Great American, a surety of the contractor, does not have a cause of action in fort against Wade Trim or Somat. According to Great American, however, the case of Bacco Construction Co., v. American Colloid Co., 148 Mich.App. 397, 384 N.W.2d 427 (1986), creates a cause of action in negligence for Great American against Wade Trim and Somat and, therefore, the district court improperly granted summary judgment in favor of Wade Trim and Somat.
 
 
 10
 In Bacco, plaintiff, the general contractor, attempted to sue the project engineer who was employed by a Michigan county to construct a waste water lagoon and irrigation system. The plaintiff alleged that the project engineer negligently applied betonite material in the lagoons thus causing an extensive leak. The trial court rejected this claim, granting summary judgment in favor of the project engineer on the basis that the project engineer was employed by the county, not plaintiff, and thus plaintiff lacked contractual privity with the project engineer.
 
 
 11
 The Michigan court of appeals reversed the trial court's grant of summary judgment in favor of the project engineer. The court stated that "the clear trend in other jurisdictions is to allow a negligence action without direct privity of contract." Id. at 414. The court concluded that it was foreseeable that an engineer's failure to make proper calculations and specifications for a construction job could cause the contractor to incur financial hardship by having to cure the resulting defects. Consequently, the court allowed the general contractor to maintain a negligence claim against the project engineer.
 
 
 12
 The relationship between Great American and Wade Trim and Somat is different than that between the project engineer and the contractor in Bacco. While Bacco establishes the rule that a contractor may have a claim for negligence against a project engineer absent contractual privity, neither party cites nor do we find any Michigan authority suggesting that a contractor's surety may have such a claim. Indeed, we believe that Bacco does not apply in the present case. Under the contractual provisions between the parties in this case, the contractor is responsible for making sure that the final construction complies with the contract specifications. Therefore, any negligence on the part of Wade Trim and Somat, as such, does not cause the surety, Great American, financial hardship.
 
 
 13
 Great American cites American Fidelity Fire Insurance Co., v. Pavia-Byrne Engineering Corp., 393 So.2d 830 (La.App.1981), and Calandro Development, Inc. v. R.M. Butler Contractors Inc., 249 So.2d 254 (La.App.1971), as authority for its proposition that the contractor's surety may sue the project engineer and its testing agent for negligence. These cases held that an engineer may be liable to a contractor's surety for failure to perform duties undertaken by contracts, notwithstanding the lack of contractual privity.
 
 
 14
 The courts' rationale in American Fidelity and Calandro is inapplicable to the present case. In those cases, the courts found a duty to the surety predicated on the following reasoning:
 
 
 15
 [A]n engineer or architect must be deemed and held to know that his services are for the protection, not only of the interests of the owner, but also the surety on the contractor's bond who has no supervisory power whatsoever, and who must perforce rely on the architect or engineer to produce a completed project conformable with the contract plans and specifications....
 
 
 16
 American Fidelity at 838; Calandro at 265. This reasoning does not apply to the present case. Here, the terms of the contractual agreements were so plain and unambiguous that neither Great American could expect nor could Wade Trim be "deemed and held to know that [their] services [were] for the protection ... [of] the surety ...". The analysis in J & J Electric, Inc., v. Gilbert H. Moen Company, 9 Wash.App. 954, 516 P.2d 217 (1973), review denied 83 Wash.2d 1008 (1974), is illustrative.
 
 
 17
 In J & J Electric, the court rejected a contractor surety's claim for negligence which alleged that the architects and engineers on a construction project owed it a duty to discover the faulty performance of its insured. The court held that under the contractual provisions, the architects and engineers were not required to make exhaustive or continuous on-site inspections to check the quantity and quality of work. Moreover, the architects and engineers would not be responsible for the contractor's failure to perform in accordance with the contract documents.
 
 
 18
 Similarly, in the present case, the Engineering Services Agreement and the Contract Documents which are incorporated in the Performance Bond between Great American and Harte, contain several provisions which limit Wade Trim's and Somat's liability for the failure of the construction to comply with the contract specifications. For example, the Engineering Services Agreement states that Wade Trim efforts were to be directed toward:
 
 
 19
 providing a greater degree of confidence for owner that the completed work of Contractors will conform to the Contract Documents, but Engineer shall not be responsible for the failure of Contractor(s) to perform the work in accordance with the Contract Documents.
 
 
 20
 Moreover, Wade Trim's presence on the site did not make them "responsible for construction means, methods, techniques, sequences or procedures for safety precautions or programs, or for contractor's failure to perform their work in accordance with the contract documents". The Contract Documents contain similar limitations. Paragraph 9.11 of the General Conditions states:
 
 
 21
 Neither ENGINEER's authority to act under this ARTICLE 9 or elsewhere in the Contract Documents nor any decision made by ENGINEER in good faith either to exercise or not exercise authority such authority shall give rise to any duty or responsibility of ENGINEER to CONTRACTOR, any Subcontractor, any manufacturer fabricator, supplier or distributor or any of their agents or employees or any other person performing any of the WORK.
 
 
 22
 Finally, the Contract Documents state in regard to testing:
 
 
 23
 Neither observations by Engineer nor inspections, tests or approvals by others shall relieve CONTRACTOR from his obligations to perform the Work in accordance with the Contract Documents.
 
 
 24
 Consequently, we believe that in these circumstances Great American cannot be said to have relied or Wade Trim and Somat to have known that their services were for the protection of Great American. Thus, Wade Trim and Somat did not have a duty to Great American. Accordingly, the district court properly granted summary judgment against Great American for failure to state a claim for negligence under Michigan law.
 
 B. INDEMNITY
 
 25
 Great American also asserts a claim for indemnity. Great American contends that it has a cause of action under either common law or implied indemnity. Wade Trim and Somat respond, as they did below, that they are entitled to summary judgment because the principal complaint alleged only active negligence against Harte and Great American.
 
 
 26
 Michigan courts have recognized three forms of indemnity: express, implied, or by common law. Gruett v. Total Petroleum, 182 Mich.App. 301, 306, 451 N.W.2d 608, rev'd on other grounds, 437 Mich. 875, 463 N.W.2d 711 (1990). Generally, indemnity is available only if the party seeking it is not actively negligent. Langley v. Harris Corp., 413 Mich 592, 601, 321 N.W.2d 662 (1982). As Harte's surety, Great American liability is coextensive with Harte's liability. See Indemnity Insurance Co. of North American v. Otis Elevator Co., 315 Mich. 393, 24 N.W.2d 104 (1946); Ackron Contracting Co., v. Oakland County, 108 Mich.App. 767, 310 N.W.2d 874 (1981).
 
 
 27
 Great American claims to have a cause for common law indemnity. In determining whether a party stated a cause of action common law indemnity, Michigan courts look to the primary plaintiff's complaint. Hill v. Sullivan Co., 86 Mich.App. 693, 696-697, 273 N.W.2d 527 (1978), Peeples v. Detroit, 99 Mich.App. 285, 293, 297 N.W.2d 839 (1980). If the complaint alleges only "active" negligence or fault, the defendant is not entitled to common law indemnity. Id. The primary complaint in the present case alleges active fault, not vicarious or derivative liability, against Harte and Great American. Consequently, Great American is not entitled to common law indemnification.
 
 
 28
 Great American also contends that it has a cause of action for implied indemnity. Like common law indemnity, indemnification for an implied indemnity is not available to a party who is alleged to have been actively negligent. "[A]llegations of active negligence alone could preclude [surety] from seeking implied contractual indemnity ..." Gruett, 182 Mich.App. at 306, citing Bosak v. Hutchinson, 422 Mich. 712, 724-729, 375 N.W.2d 333 (1985), and Hadley v. Trio Tool Co., 143 Mich.App. 319, 329-331, 372 N.W.2d 537 (1985). In addition, a special relationship between the parties or a course of conduct must exist whereby one party undertakes to perform a certain service and impliedly assures indemnification. Dale v. Whiteman, 388 Mich. 698, 202 N.W.2d 797 (1972). See also Diekevers v. SCM Corp., 73 Mich.App. 78, 250 N.W.2d 548 (1976).
 
 
 29
 In order to determine whether a third-party plaintiff has stated a cause of action for implied indemnity, the court must look to the third-party complaint as well as the original complaint. Id. In the present case, the primary complaint clearly alleged active negligence on the part of Harte and Great American. Moreover, we note that Great American's third party complaint does not contain any allegations of vicarious liability or by operation of the law. Rather, Great American "denies any breach of warranties or failure to perform as required under the contract documents."
 
 
 30
 Great American argues that it should be given the opportunity to prove, as alleged, that it was without active negligence and that the Drain Commissioner and Road Commission damages were caused solely and proximately by Wade Trim and Somat. We disagree. Michigan courts have held that allegations in the primary complaint of active negligence or fault preclude recovery for indemnity. See Williams v. Unit Handling Systems Division of Litton Systems, Inc., 433 Mich. 755, 449 N.W.2d 669 (1989)
 
 
 31
 Additionally, we note that assuming that Great American or Harte will prevail in the underlying action such that each is not found to be actively negligent, there would obviously be no recovery by the Drain Commissioner or the Road Commission and, consequently, nothing for Great American to seek in the way of indemnification from Wade Trim and Somat. Moreover, we need not determine whether a special relationship exists because Great American is precluded from recovery for indemnity. Thus, the district court properly granted summary judgment as to the claims for common law and implied contractual indemnification.
 
 IV.
 
 32
 For the reasons stated above, we affirm the judgment and order of the Honorable Anna Diggs Taylor, United States District Court Judge for the Eastern District of Michigan.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The original case was remanded to the Monroe County Circuit Court for lack of diversity jurisdiction