# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUBURN HILLS TAX INCREMENT FINANCE
AUTHORITY,

        Plaintiff-Appellant,

v

HAUSSMAN CONSTRUCTION COMPANY and
DENNIS BURT,

        Defendants,

and

MAYOTTE GROUP, INC.,

        Defendant-Appellee.

UNPUBLISHED
January 11, 2018

No. 333972
Oakland Circuit Court
LC No. 2015-149357-CB

---

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Plaintiff, the Auburn Hills Tax Increment Finance Authority, appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) and dismissing plaintiff's claims of professional negligence and negligent misrepresentation against defendant, Mayotte Group, Inc. (Mayotte).[1] We affirm.

## I. BACKGROUND

On August 8, 2011, general contractor, Haussman Construction Company (Haussman), and the architecture firm, Mayotte, entered into a Builder-Architect Agreement with Mayotte agreeing to provide architectural services for the construction of a four-story concrete parking structure (the Project) to be built in Auburn Hills, Michigan. The owner of the Project was listed

---

[1] As discussed below, plaintiff's claims against defendants, Haussman Construction Company and Dennis Burt, were not the subject of the trial court's order, as those claims were subject to an automatic stay because Burt filed for bankruptcy.

-1-

as the City of Auburn Hills. The Builder-Architect Agreement indicated that the date of the contract between Haussman and the "Owner" was "TBD."

Thereafter, plaintiff, as the owner, and Haussman entered into an Owner-Builder Agreement with Haussman agreeing to serve as general contractor for the design and construction of the Project. The "owner" was listed as the Auburn Hills Tax Increment Finance Authority. Mayotte, which was not a party to that contract, was listed as the architect for the Project. Attached to the Owner-Builder Agreement was an addendum that included a liquidated damages provision in the event that the construction was not completed on time. Haussman agreed to pay $1,000 a day for each day "that expired after the contractually specified time for completion until the Project was substantially completed." A date for the completion of the Project, however, was not included in the provision.

According to plaintiff's former executive director, Thomas Tanghe, Haussman was required under the Owner-Builder Agreement to select and retain an architect because plaintiff wanted the architect "to be working directly for [Haussman] and not for us." For that reason, the provision in the Owner-Builder Agreement that required plaintiff to retain an architect was crossed out and initialed "CM," which stood for "construction manager." Tanghe acknowledged that there was never an agreement between plaintiff and Mayotte. After completing the Project allegedly behind schedule, defendant Dennis Burt, as the "principal, majority shareholder, and President," dissolved Haussman and left Michigan without paying Haussman's subcontractors.

In its complaint, plaintiff raised two claims against Mayotte: professional negligence and negligent misrepresentation.[2] Plaintiff alleged that Mayotte was responsible for "issuing a final Certificate for Payment" and reporting any "known deviations from the construction schedule" to plaintiff pursuant to the Builder-Architect Agreement. According to plaintiff, the Builder-Architect Agreement incorporated the "General Conditions" of plaintiff and Haussman's Owner-Builder Agreement. Plaintiff also claimed that "the Project was only substantially completed several months after the contractually specified time for completion." Plaintiff alleged that Mayotte certified the last payment to Haussman "for the full amount of the [Owner-Builder Agreement] contract sum, less $13,408.93 as retainage, without any allowance for the liquidated damages specified in the [Owner-Builder Agreement]." Further, plaintiff alleged that Haussman was "paid the full amount of the [Owner-Builder Agreement] contract sum," but that Haussman "failed to pay its subcontractors on the Project, which then made claims on these funds against [plaintiff]." Therefore, plaintiff alleged that it paid "two times for some of the same work" because it was forced to pay Haussman's subcontractors.

On December 3, 2015, the trial court entered an order staying the case due to Burt's bankruptcy filing in a Florida federal court. However, the trial court eventually lifted the stay with regard to plaintiff's claims against Mayotte. Subsequently, Mayotte filed a motion for summary disposition under MCR 2.116(C)(10). Ultimately, the trial court granted Mayotte's motion for summary disposition because plaintiff had failed to identify any provision of the

---

[2] Plaintiff also raised five claims against Haussman and Burt: (1) breach of contract, (2) unjust enrichment, (3) liquidated damages, (4) fraud, and (5) common law and statutory conversion.

Builder-Architect Agreement that required Mayotte to "assess [p]laintiff's right to liquidated damages or to approve payment claims." Therefore, the trial court ruled that plaintiff had "failed to present any evidence establish[ing] that it was Mayotte's duty to administer the construction or approve payments to Haussman."

On appeal, plaintiff claims that the trial court erred when it granted Mayotte's motion for summary disposition. At the outset, we note that plaintiff does not raise any contentions directly related to the trial court's grant of summary disposition concerning its negligent misrepresentation claim against Mayotte. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Therefore, plaintiff has abandoned any contentions relating to its claim of negligent misrepresentation.

Plaintiff, however, claims that the trial court erred when it granted Mayotte's motion for summary disposition on the professional negligence claim because Mayotte owed plaintiff a legal duty "to properly and accurately certify" Haussman's "pay applications" for work completed on the Project pursuant to Mayotte's contract with Haussman.[3] Plaintiff also claims, in a footnote in its brief on appeal, that Mayotte's legal duty arises from the "General Conditions" that were part of plaintiff's Owner-Builder Agreement with Haussman. Plaintiff asserts that it is entitled to foreseeable economic damages as a result of the breach of Mayotte's duties, which includes (1) damages for causing plaintiff to pay Haussman and the subcontractors for the same work, and (2) damages for failing to "conduct inspections to determine the date or dates of Substantial Completion and the date of Final Completion . . . and to issue a final Certificate of Payment."[4] Finally, plaintiff claims that the trial court granted summary disposition prematurely because the window for discovery had not closed. We conclude that the trial court did not err in granting summary disposition.

## II. NEGLIGENCE

Plaintiff first claims that Mayotte breached its professional duty of care as the architect of the Project. We disagree.

---

[3] According to Tanghe, processing pay applications entailed the following: "[Plaintiff] will send [Haussman] a pay application. On that pay application will be a certification that the work was performed, the work has been completed, and that the percentage of work completed would be attached thereto." Tange explained that he relied on the pay applications that Mayotte certified as "information that the work was complete and the contractors had been paid."

[4] Plaintiff claims that the failure to substantially complete the Project in a timely manner triggered the liquidated damages provision of the Owner-Builder Agreement, and Mayotte failed to deduct those liquidated sums from the pay applications when certifying the final Certificate of Payment.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014), citing *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). " 'Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.' " *Innovation*, 499 Mich at 507, quoting *Maiden*, 461 Mich at 120.

The elements of a prima facie case of negligence are: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), citing *Roulo v Auto Club of Mich*, 386 Mich 324, 328; 192 NW2d 237 (1971). This Court reviews de novo whether a defendant owes a plaintiff a duty. *Loweke*, 489 Mich at 162, citing *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004), and *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004). "In other words, the court determines the circumstances that must exist in order for a defendant's duty to arise." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992), citing *Smith v Allendale Mut Ins Co*, 410 Mich 685, 714-715; 303 NW2d 702 (1981). Our first task, then, is to determine whether Mayotte owed plaintiff a legal duty.

" 'It is axiomatic that there can be no tort liability unless [a] defendant[] owed a duty to [a] plaintiff.' " *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004), quoting *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997). The Michigan Supreme Court "has recognized that determining whether an action in tort can arise out of a contractual promise is often largely semantic and difficult to discern." *Loweke*, 489 Mich at 165, citing *Rinaldo's Constr Corp v Mich Bell Tel Co*, 454 Mich 65, 83; 559 NW2d 647 (1997), and *Hart v Ludwig*, 347 Mich 559, 564-565; 79 NW2d 895 (1956). Therefore, as explained by our state's Supreme Court in *Loweke*, courts must "employ a 'separate and distinct mode of analysis' to determine the threshold question: 'whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.' " *Loweke,* 489 Mich at 166, quoting *Fultz*, 470 Mich at 467, and citing 1 Torts: Michigan Law and Practice (2d ed), § 10.18, pp 10-24.

"Determining whether a duty arises separately and distinctly from the contractual agreement . . . generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether the plaintiff's injury was contemplated by the contract." *Loweke*, 489 Mich at 169, citing *Davis v Venture One Const, Inc*, 568 F3d 570, 576 (CA 6, 2009). Rather, the test "is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another." *Loweke*, 489 Mich at 169, citing *Fultz*, 470 Mich at 461-462. Therefore, " [w]hether a particular defendant

owes *any duty at all* to a particular plaintiff [in tort],' is generally determined without regard to the obligations contained within the contract." *Loweke*, 489 Mich at 171, quoting *Fultz*, 470 Mich at 467 (alterations in original).

Michigan courts recognize that "a separate and distinct duty to support a cause of action in tort can arise by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings." *Loweke* 489 Mich at 169-170 (citations omitted). "If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz*, 470 Mich at 465.

Plaintiff contends that Mayotte owed plaintiff a legal duty to "to properly and accurately certify" Haussman's "pay applications" for work completed on the Project pursuant to the Builder-Architect Agreement. Similarly, plaintiff also contends that Mayotte's legal duty originates from the "General Conditions" that were part of the Owner-Builder Agreement. Plaintiff's contentions are without merit. These alleged duties arise from a contract—not from a "separate and distinct" legal duty.

Even more, Mayotte's contractual obligations were not so broad as to contain the kinds of duties that plaintiff alleges. Under § 2.3.11 of Mayotte's contract with Haussman, Haussman could request Mayotte to "execute certificates," but Mayotte would not be required "to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement." Specifically, Mayotte was required to certify that "to the best of [its] knowledge, information and belief the documents or services to which such certifications pertain (a) are consistent with the Project Criteria provided to the Architect by [Haussman] except to the extent specifically identified in such certificate, (b) comply with applicable professional practice standards, and (c) comply with applicable laws, ordinances, codes, rules and regulations governing" the Project.

Mayotte's contract with Haussman did not require Mayotte to assess whether plaintiff was owed any liquidated damages due to delays in completion of the Project. Furthermore, neither Mayotte's nor plaintiff's contract with Haussman specified a completion date for the Project for purposes of liquidated damages. And while plaintiff contends that Mayotte's contract expressly incorporated plaintiff's contract with Haussman as "Exhibit B" to that contract, in fact, Mayotte's contract with Haussman identifies "Exhibit B" as "AIA Document B143-2004," which is the titled form used for Mayotte's contract with Haussman. Further, plaintiff's former executive director, Tanghe, testified that plaintiff did not request Mayotte to deduct liquidated damages from the "pay applications," and Mayotte did not promise plaintiff that it would subtract any liquidated damages from the "pay applications." Plaintiff failed to produce any evidence that demonstrated that Mayotte had an obligation to assess liquidated damages or to notify plaintiff that Haussman was not paying its subcontractors. Absent such evidence, plaintiff has failed to provide any support for its claim that Mayotte owed it such a duty.

Plaintiff, however, cites to a number of early Michigan cases defining an architect's professional standard of care. According to *Swarthout v Beard*, 33 Mich App 395, 401; 190 NW2d 373 (1971), rev'd on other grounds *Smith v City of Detroit*, 388 Mich 637; 202 NW2d 300 (1972), "The responsibility of an architect may be similar to that of a lawyer or a physician;

the law requires the exercise of ordinary skill and care common to the profession." In such cases, "privity of contract is not required." *Francisico v Manson, Jackson & Kane, Inc*, 145 Mich App 255, 261; 377 NW2d 313 (1985). Thus, plaintiff argues that Mayotte had a separate and distinct duty as an architect to certify the pay applications with the kind of care common to the architectural field. Plaintiff has provided no support for the claim that an architect has a common law duty "to properly and adequately certify payment applications" to a third party. Instead, plaintiff only refers to the contract and its attachments as the source of this duty.

Regardless, plaintiff asserts that Mayotte, as an architect, still owed plaintiff a duty under this Court's decision in *Bacco Const Co v Am Colloid Co*, 148 Mich App 397, 414; 384 NW2d 427 (1986), to refrain from actions that cause economic harm. However, *Bacco* was decided before November 1, 1990, and therefore, is not binding on this Court pursuant to MCR 7.215(J)(1). Further, while we addressed the issue in *Bacco* of "whether a contractor may maintain an action against a project engineer or architect in the absence of a contractual relationship," *id.*, our Supreme Court later established the legal standard involving tort actions independent of a defendant's contractual obligation, see *Loweke*, 489 Mich at 169-170; *Fultz*, 470 Mich at 467-468. Thus, to the extent that *Bacco* is inconsistent with *Loweke* and *Fultz*, it is overruled, and plaintiff's contention is unavailing.

## IV. DISCOVERY

Plaintiff next claims that the trial court's grant of summary disposition was premature because discovery had not yet closed. We disagree.

"Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009), citing *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). However, summary disposition is proper when "there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009), *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133, 140; 657 NW2d 741 (2002). "Indeed, a party claiming that summary disposition is premature must 'identify[ ] a disputed issue and support[ ] that issue with independent evidence.' " *Meisner Law Group PC v Weston Downs Condo Assn*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 332815); slip op at 8, quoting *Froling Trust*, 283 Mich App at 292 (alterations in original).

Plaintiff contends that summary disposition was premature because it was still seeking a copy of "Exhibit B" to Mayotte's contract with Haussman, which fully delineated Mayotte's services under that contract, and that it was attempting to obtain a copy of that document from Burt in his bankruptcy proceeding because Mayotte had failed to produce that document. In Mayotte's contract with Haussman, "Exhibit B" was described as "AIA Document B143-2004, Exhibit B, Architect's Services, or as follows: (List other documents, if any, delineating Architect's scope of services and attach to this Agreement as Exhibit B)."

As discussed above, AIA Document B143-2004 was the designation of the form that was used for Mayotte's contract with Haussman. Further, no other documents were identified in the

contract. Therefore, there is no reason to conclude that plaintiff did not have the entirety of "Exhibit B." Because plaintiff has failed to provide any independent evidence regarding the disputed issue here, i.e., Mayotte's purported legal duty to plaintiff, plaintiff has failed to demonstrate that summary disposition was prematurely granted by the trial court.

Affirmed.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher